# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **LORI FREY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 7:23-cv-967-ACA** |
| | ) | |
| **HED GROUP, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Lori Frey filed her initial complaint in state court, alleging claims of negligence and wantonness against Defendant RMTDD Anchor Group, LLP ("Anchor Group"), its employees Preston Lee and Aaron Wade (collectively, the "Manager Defendants"), and Defendant HED Group, Inc., arising from a slip and fall on the premises of a business they ran. (*See* doc. 1-1). Anchor Group removed this case to federal court, invoking diversity of citizenship under 28 U.S.C. § 1332. (Doc. 1). Anchor Group contends that the Manager Defendants are fraudulently joined and therefore the court must disregard their citizenship. (*See id*. ¶ 11(e)–(f)).[1]

---

[1] Anchor Group also asserts that HED Group is fraudulently joined. (*See* doc. 1 ¶ 11(d); *accord* doc. 15 at 14–16). Because the court finds that the Manager Defendants are not fraudulently joined, the court lacks subject matter jurisdiction irrespective of whether HED Group is fraudulently joined. *See* 28 U.S.C. § 1332(a). Accordingly, the court makes no finding as to HED Group and limits its analysis to the Manager Defendants.

Ms. Frey has moved to remand the case to state court. (Doc. 11). Because Anchor Group has not met its burden of showing that the Manager Defendants are fraudulently joined, the court **GRANTS** Ms. Frey's motion to remand.

## I.   BACKGROUND

To properly remove an action from a state court, this court must have been able to exercise original jurisdiction over the complaint. 28 U.S.C. § 1441(a). Relevant here, the court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." *Id*. § 1332(a). The amount in controversy is satisfied. (*See* doc. 1-3 ¶ 6). But the parties are not diverse. (*See* doc. 9 ¶¶ 1, 5–6; doc. 1-1 at 3 ¶ 1).

Anchor Group asserts that the court must disregard the Manager Defendants' citizenship because Ms. Frey has fraudulently joined them to destroy diversity jurisdiction. (*See* doc. 1 ¶ 11(e)–(f)). To succeed in this assertion, Anchor Group must prove that "there is no possibility" Ms. Frey "can establish a cause of action against" the Manager Defendants. *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). Ordinarily, the court turns to the facts as alleged by Ms. Frey in her complaint to discern whether a potential cause of action exists. *See id*. But cases involving alleged fraudulent joinder work differently. *See*, *e.g.*, *id*.; *accord Legg v. Wyeth*, 428 F.3d 1317, 1322–25 (11th Cir. 2005).

If a defendant presents evidence contesting the substantive allegations in the complaint, the court's "authority to look into the ultimate merit of the plaintiff's claims [is] limited to checking for obviously fraudulent or frivolous claims" against the nondiverse defendant. *Crowe*, 113 F.3d at 1542. "[T]he plaintiff need not show that he could survive in the district court a motion for summary judgment filed by th[e] in-state defendant . . . [t]here need only be a reasonable basis for predicting that the state law might impose liability on the facts involved." *Id*. at 1541–42 (emphasis and quotation marks omitted). In performing this analysis, "extraordinary care" must be used "to avoid jumbling up motions for remand and motions for summary judgment," *id*. at 1542, because "the jurisdictional inquiry must not subsume substantive determination," *id*. at 1538 (quotation marks omitted).

So, these are the facts as alleged by Ms. Frey and supplemented by the evidence before the court:

Ms. Frey was a patron at River's Edge Bingo Hall in Greene County, Alabama. (Doc. 1-3 ¶ 2; *see also* doc. 1-1 at 4 ¶ 2, at 4 ¶ 7). Anchor Group operated the bingo hall at the time relevant to this action. (Doc. 1-2 ¶ 5). Ms. Frey alleges that the Manager Defendants were managers of the bingo hall (*see* doc. 1-1 at 5 ¶ 9), and Anchor Group does not dispute this assertion (doc. 15 at 17; *see also* doc. 1-2 ¶ 6).

Due to some sort of substance on the bingo hall's floor, Ms. Frey slipped and fell, resulting in injuries to her neck, back, and right knee. (Doc. 1-1 at 4 ¶ 7, at 5–6

¶ 13, at 6 ¶ 15; doc. 12-1 ¶¶ 3, 5). A witness reported Ms. Frey's fall to an employee at River's Edge Bingo Hall, who the witness "understood was the manager" of the bingo hall. (Doc. 12-1 ¶ 4). The manager-employee "apologized that the area had not been cleaned up sooner and proceed to get a mop and clean up the substance on the floor." (*Id*. ¶ 5).

Anchor Group submitted affidavits from the Manager Defendants in which they testify that they "did not act in any manner directly toward [Ms.] Frey to cause injury to her and had no knowledge that she was involved in any incident or fall until [they] learned of this lawsuit." (Doc. 9-3 ¶ 6; doc. 9-4 ¶ 6). But Ms. Frey has submitted evidence that an employee with managerial responsibilities—which Anchor Group concedes the Manager Defendants had—apologized for not cleaning up the bingo hall's floor sooner. (*See* doc. 12-1 ¶¶ 4–5; *see also* doc. 15 at 17). Considering the competing affidavits about a manager's involvement in the fall and the "lighter than" summary judgment burden at this stage, a dispute exists about whether one of the Manager Defendants responded to Ms. Frey's fall with an apology and cleaning of the substance on the floor. *See Crowe*, 113 F.3d at 1541–42.

## II.    DISCUSSION

Anchor Group asserts that Alabama law is neither "unclear [n]or unsettled": a managerial employee cannot, according to Anchor Group, be liable for an act or

omission that renders the employer's premises unsafe to invitees on the premises. (Doc. 15 at 10–14, 16). And Ms. Frey argues that she has "prove[n]" that the Manager Defendants can be liable under Alabama law. (*See* doc. 12 at 21–22). Of course, both statements cannot be true.

"The rule of law for cases such as this is that there is a duty upon all storekeepers to exercise reasonable care in providing and maintaining a reasonably safe premises for the use of their customers." *McCombs v. Bruno's, Inc.*, 667 So. 2d 710, 712 (Ala. 1995) (quotation marks omitted). Alabama courts also refer to this duty as one owed by a "premises owner" to its invitees. *See*, *e.g.*, *Dolgencorp, Inc. v. Taylor*, 28 So. 3d 737, 741 (Ala. 2009) ("The liability of a premises owner to an invitee is well settled.").

Ms. Frey does not contend that the Manager Defendants owned the bingo hall. (*See* doc. 1-1). She instead contends that the Manager Defendants caused her injuries because they neglected their managerial responsibilities and allowed a defective condition to remain on the bingo hall's premises, which caused Anchor Group to breach its duty as the owner of the premises. (*See* doc. 12 at 25; *see also* doc. 1-1 at 4 ¶ 7, at 5 ¶ 10).

Under Alabama law, "the general rule is that officers or employees of a corporation are liable for torts in which they have personally participated." *Ex parte Charles Bell Pontiac-Buick-Cadillac-GMC, Inc.*, 496 So. 2d 774, 775 (Ala. 1986);

*see also*, *e.g.*, *Waters v. Anthony*, 40 So. 2d 316, 318–19 (Ala. 1949). In *Waters*, a movie theatre patron sat on a defective theatre seat, resulting in personal injuries. 40 So. 2d at 317. The patron sued both the owner of the movie theatre and the manager who was on duty at the time of her fall, alleging that each was negligent in "furnishing [her] with a defective seat." *Id*. The manager asserted that his duty extended only to the owner of the movie theatre, as his employer, and not to his employer's patrons. *Id*. at 318.

The Alabama Supreme Court disagreed, reasoning that when an employee negligently performs the work-related duties he owes to his employer, "the duty which he breached is not alone that due to his employer, but also to an invitee who is proximately injured thereby." *Id*. Put differently, if an employee "is performing his duties ow[ed] to his [employer] under his contract, it [i]s his duty to use reasonable care in the manner of doing it so as not to cause injury to third persons exercising their lawful rights as patrons of the" premises. *Waters*, 40 So. 2d at 319.

And more recent persuasive appellate precedent continues to apply this rule. *See Boyd v. Wal-Mart Stores, Inc.*, 710 So. 2d 1258, 1260 (Ala. Civ. App. 1997). In *Boyd*, a Wal-Mart patron slipped on some rainwater that had accumulated on the store's floor and fell, resulting in personal injuries. 710 So. 2d at 1260. The patron sued Wal-Mart and the on-duty store managers, "alleging that they had acted negligently or wantonly in failing to maintain a reasonably safe premises" at the

store. *Id*. at 1259. The trial court entered summary judgment in the defendants' favor as to the negligence claim, and the Alabama Court of Civil Appeals reversed. *Id*. at 1560–61.

The appellate court began by observing that a "shopkeeper . . . must use due care to take measures intended to prevent accidents when there are unusual accumulations of rainwater." *Id*. at 1260 (quotation marks omitted). The appellate court concluded that it could not "say that, as a matter of law, the evidence before [the court] show[ed] that Wal–Mart" and the on-duty managers "were not negligent." *Id*.

Ultimately, Anchor Group discusses separately the duty an employee owes its employer and the duty a premise owner owes its patrons. (*See* doc 15 at 11–12, 16–17). But Anchor Group does not address what happens under Alabama law when a patron alleges that an employee negligently performed a duty he owes his employer which results in injury to the patron. (*See id*.). Accordingly, Anchor group has not proven that "there is no possibility" Ms. Frey "can establish a cause of action against" the Manager Defendants. *See Crowe*, 113 F.3d at 1538. And the court "must resolve any uncertainty about state substantive law in" Ms. Frey's favor. *See id*.

As an alternative to remand, Anchor Group requests that this court certify the question to the Alabama Supreme Court. (*See* doc. 15 at 16). But controlling precedent dictates that certification is inappropriate here. *See Crowe*, 113 F.3d at

1540. When a case is properly in federal court, district court must either follow applicable state court precedent on issues of substantive law, predict how the state supreme court would rule on an issue, or certify the question to the state supreme court. *See id.* But to determine if remand is appropriate, "the inquiry by federal judges *must* not go so far." *Id.* (emphasis added). The court therefore will not certify this question to the Alabama Supreme Court.

Accordingly, the court **GRANTS** Ms. Frey's motion to remand (doc. 11) and **REMANDS** this case to state court for further proceedings.

## III.   CONCLUSION

The court **GRANTS** Ms. Frey's motion to remand (doc. 11) and **REMANDS** this case to state court for further proceedings. The court **DIRECTS** the Clerk of Court to close this case.

**DONE** and **ORDERED** this November 21, 2023.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE